IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LORENZO CASTRO-MANZANAREZ,<br><br>Defendant. | Case No. 21-00200-13-CR-W-RK |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Jeffrey Ray, Acting United States Attorney, and Rudolph R. Rhodes IV, Nicholas P. Heberle, and David Wagner, Assistant United States Attorneys, and the defendant, Lorenzo Castro-Manzanarez ("the defendant"), represented by Shane L. Farrow.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney's Office for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count One of the Indictment charging him with a violation of 18 U.S.C. § 1962(d), that is, racketeer influenced and corrupt organizations (RICO) conspiracy. By entering into this plea agreement, the defendant admits that he knowingly committed this offense, and is in fact guilty of this offense. As specifically described below, the defendant also admits to Allegation of Criminal Forfeiture I: RICO in the Indictment and agrees to forfeit property in which he has an interest as described therein as well as agrees to the imposition of a money judgment representing proceeds the defendant personally obtained as the result of his participation in the RICO conspiracy as well as representing any interest he holds, or held, acquired, maintained or afforded any source of influence over the RICO conspiracy.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which he is pleading guilty are as follows:

From on or about January 1, 2018, through August 10, 2021, with acts occurring in the Western District of Missouri, and elsewhere, the defendant knowingly and intentionally participated in the racketeering conspiracy charged in Count One of the Indictment. In joining the conspiracy, the defendant understood that a racketeering enterprise existed, at least in relevant part, as described in paragraphs 13 through 22 of the Indictment, and that the enterprise's activities affected interstate commerce. The enterprise had a common purpose; general continuity of structure and personnel; and was ascertainable outside of its racketeering activities. The defendant also understood that two or more people had reached an agreement or understanding to conduct or participate in the conduct of the affairs of the enterprise, directly or indirectly, through commission of at least two acts of racketeering, as described in paragraph 28 of the Indictment. The defendant

2

associated himself with the enterprise and voluntarily and intentionally joined in the agreement or understanding specifically intending to be associated with the enterprise and participate in the affairs of the enterprise.

To this end, the defendant agreed to commit, did commit, or understood, based on the purpose of the enterprise, that a co-conspirator would commit the following types of racketeering acts:

    a. On November 23, 2019, the defendant agreed and conspired with co-defendant Jose Luis Bravo to knowingly transport two illegal aliens, J.S. and R.P., who were working at Cantina Bravo Grille, an enterprise-affiliated restaurant in St. Robert, Missouri, a location within the Western District of Missouri. At the time of agreement, the defendant and co-defendant Jose Bravo knew the aliens had entered or remained in the United States in violation of the law. At the time of agreement, both the defendant and Jose Bravo intended the transportation to be for financial gain and intended the transportation to further the aliens' illegal presence in the United States, as J.S. and R.P. were being transported to work at enterprise-affiliated restaurants. The next day, November 24, 2019, the defendant did, in fact, knowingly transport J.S. and R.P. from St. Robert, Missouri, to Claremore, Oklahoma, so they could work at enterprise-affiliated restaurants.

    b. On October 11, 2019, while managing Cantina Bravo Grille in St. Robert, Missouri, Homeland Security Investigations (hereinafter "HSI") alerted the defendant that several employees, including C.J. and V.S, were ineligible to work in the United States. Next, on October 25, 2019, HSI was informed that C.J., and V.S. had been

3

Case 4:21-cr-00200-RK    Document 869    Filed 07/28/25    Page 3 of 18

terminated from Cantina Bravo Grille. Knowing this history, the defendant, working with other co-conspirators, opened a new enterprise-affiliated restaurant, El Poblano, in Springfield, Missouri, a location in the Western District of Missouri. Knowing that C.J. and V.S. were aliens who had entered or remained in the United States in violation of the law, the defendant rehired them to work at El Poblano, allowed them to work under fraudulent documentation, and falsely attested on their Form I-9 documentation that to the best of his knowledge they were authorized to work in the United States. In hiring C.J. and V.S. and allowing them to work under fraudulent documentation, the defendant encouraged and induced C.J. and V.S. to remain and reside in the United States in violation of the law. The defendant took these actions for financial gain.

c. On February 11, 2020, the defendant falsely claimed and attested on a Form I-9 that he was a United States citizen. In connection with the Form I-9, the defendant used and possessed a counterfeit social security card, knowing it was counterfeit.

The defendant agrees and admits that after indictment in this case—and while on bond—he knowingly continued to employ illegal aliens, provide illegal aliens workers with housing at residences in his name, and allow illegal aliens to work at his restaurants under fraudulent documentation, including fraudulent social security cards and numbers. The defendant took these actions to ensure his restaurants in Springfield, Missouri, Columbia, Missouri, and Jefferson City, Missouri, remained staffed and profitable. In taking these actions, the defendant harbored illegal aliens as well as encouraged and induced the illegal aliens to remain and reside in the United States in violation of the law, all for financial gain

4

The defendant agrees that proceeds the defendant obtained as the result of his participation in the RICO conspiracy; any ownership interest he holds, or held, acquired or maintained as part of the RICO conspiracy; and any ownership interest he holds, or held, that afforded any source of influence over the RICO conspiracy are subject to forfeiture. Specifically, as part of the agreement, the defendant agrees to forfeit the contents of Central Bank of the Ozarks Account Number x6019 as well as the imposition of a money judgment in the amount of $90,814.68.

**4. Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3. The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Indictment as well as all other uncharged related criminal activity, including activity engaged in after the indictment, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3 in calculating the offense level for the charge to which he is pleading guilty.

**5. Statutory Penalties.** The defendant understands that upon his plea of guilty to Count One of the Indictment charging him with RICO conspiracy, the maximum penalty the Court may impose is not more than 20 years of imprisonment, a $250,000 fine, three years of supervised release, an order of restitution, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

   a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable;"

   b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

   c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three years; the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

   d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

   e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

   f. any sentence of imprisonment imposed by the Court will not allow for parole;

   g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

   h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court;

   i. the defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings;

6

j. the defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p), including but not limited to the following specific property: the contents of Central Bank of the Ozarks Account Number x6019 as well as the imposition of a money judgment in the amount of $90,814.68, representing proceeds the defendant personally obtained as the result of his participation in the RICO conspiracy or representing interests the defendant holds, or held, acquired, maintained, and/or afforded a source of influence over the RICO conspiracy. With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

k. the defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which he, his co-defendants and his co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from January 1, 2018, to the present. The defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets;

l. the defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing;

m. within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility; and

n. the defendant states that he is the sole and rightful owner of the contents of Central Bank of the Ozarks Account Number x6019 and to the best of his knowledge no one else has any ownership or other interest in the property.

7

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to violations of 18 U.S.C. § 1962, 1546, 1028, 1956, and 1957; violations of 42 U.S.C. § 408; and violations of 8 U.S.C. §§ 1324 and 1324a, all related to receiving, transporting, harboring, and/or employing illegal workers in the United States or related to false documents, for which it has venue and which arose out of the defendant's conduct described above, including the defendant's post-indictment conduct outlined above. Additionally, the Acting United States Attorney for the Western District of Missouri agrees to dismiss counts 23, 24, 27, and 28 at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence, or any criminal activity of which the Acting United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further

8

understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

   8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

   9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable

9

Sentencing Guidelines range or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

**10.** **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable;"

    b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2E1.1, which provides for a base offense level of at least 19;

    c. While the parties recognize there might be other specific aggravating or mitigating U.S.S.G. applications applicable to the defendant, the parties elect to address those at sentencing;

    d. The defendant has admitted his guilt and clearly accepted responsibility for his actions. Consequently, he is entitled to a two-level reduction pursuant to § 3E1.1(a) of the Sentencing Guidelines;

    e. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

    f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

    g. There is no agreement between the parties regarding their respective sentencing recommendations. As such, each party is free to argue for a sentence below, within, or above the court-determined Guidelines range. Any agreement by the parties regarding their sentencing recommendations is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable;"

10

Case 4:21-cr-00200-RK    Document 869    Filed 07/28/25    Page 10 of 18

h.  The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed and waives any right to have those facts alleged in the Indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay, and including activity engaged in after the indictment;

i.  The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13. Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

11

a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

b. comment on the evidence supporting the charge in the Indictment;

c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

d. oppose any post-conviction motions for reduction of sentence, or other relief.

**14. Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

a. the right to plead not guilty and to persist in a plea of not guilty;

b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d. the right to confront and cross-examine the witnesses who testify against him;

e. the right to compel or subpoena witnesses to appear on his behalf; and

f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant

12

answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

   a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

   b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

   a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Indictment which are to be dismissed and all other uncharged related criminal activity. To the extent applicable, the United States is not seeking restitution in this matter, as "determining complex issues of fact related to the cause or amount of losses would complicate or prolong the sentencing process to a degree that the need to provide restitution . . . is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A.

13

b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

f. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

g. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

h. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under

14

this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17.** **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18.** **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19.** **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea

15

agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**20.** **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

**21.** **Immigration Consequences.** The defendant understands that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including potentially the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States. Further, the defendant understands that he is bound by his guilty

16

plea regardless of any immigration consequences of the plea and regardless of any advice the defendant has received from his counsel or others regarding those consequences. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on those consequences and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or collateral attack of any kind challenging his guilty plea, conviction or sentence, based on the immigration consequences of his guilty plea, conviction and sentence.

22. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Dated: 7/28/25

Jeffrey Ray
Acting United States Attorney

Rudolph R. Rhodes IV
Assistant United States Attorney

17

Dated: 7/28/25

Nicholas P. Heberle
Assistant United States Attorney

Dated: 7/28/25

David Wagner
Assistant United States Attorney

    I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 7/28/25

Lorenzo Castro-Manzanarez
Defendant

    I am defendant Lorenzo Castro-Manzanarez's attorney. I have fully explained to him his rights with respect to the offenses charged in the Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Lorenzo Castro-Manzanarez's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 7/28/25

Shane L. Farrow
Attorney for Defendant

18